IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


SAMUEL W. BUNTON,                    )
                                     )
              Plaintiff,             )
                                     )
     v.                              )      1:10CV786
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social        )
Security,[1]                         )
                                     )
              Defendant.             )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Samuel W. Bunton, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (See Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __") and the parties have filed cross-motions for judgment (Docket Entries 12, 15). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution as Defendant, pursuant to Federal Rule of Civil Procedure 25(d).

<u>**PROCEDURAL HISTORY**</u>

Plaintiff applied for DIB, alleging a disability onset date of December 13, 2003. (Tr. 54-55, 67.) After denial of the application, both initially (Tr. 30, 36-39) and on reconsideration (Tr. 29, 32-34), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 31). Plaintiff, his attorney, and a vocational expert ("VE") appeared at the hearing. (Tr. 420-50.) The ALJ thereafter determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 10-23.) The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 5-8.)

In rendering this disability ruling, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2008.

2. [Plaintiff] has not engaged in substantial gainful activity since December 13, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: Fibromyalgia; Osteoporosis; Irritable Bowel Syndrome; Work-Related Injury to Left Shoulder (on alleged onset date), Status Post Corrective Surgery; Minimal to Mild Cervical Disk Disease; and Mild Coronary Atherosclerosis (20 CFR 404.1521 *et seq.*).

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

. . .

5.   After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform a full range of medium work as defined in 20 CFR 404.1567(c). [Plaintiff] has the ability to lift and carry 25 pounds frequently and 50 pounds occasionally; he has the ability to stand and walk (with normal breaks) for at least 6 hours in an 8-hour workday; he has the ability to sit (with normal breaks) for at least 6 hours in an 8-hour workday; he should avoid frequent ascending and descending stairs; he can perform pushing and pulling motions with his upper and lower extremities within the afore-mentioned weight restrictions; he can perform the following postural activities without restrictions: balancing, stooping, kneeling, crouching or crawling; and he has no visual, communicative, or environmental limitations. Further, [Plaintiff] has retained the mental capacity to perform either skilled or semi-skilled work activity on a sustained basis.

(Tr. 15-20.)

In light of the foregoing findings regarding residual functional capacity, the ALJ determined that Plaintiff could perform his past relevant work as a mechanic. (Tr. 22.) Alternatively, the ALJ adopted the VE's opinion that Plaintiff's acquired job skills would transfer to three jobs at the light level of exertion available in significant numbers in the national economy. (Id.) Accordingly, the ALJ ruled that Plaintiff did not have a "disability," as defined in the Act, at any time from the alleged onset date through the date of the decision. (Tr. 22-23.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process,

the Social Security Administration has . . . promulgated . . .
detailed regulations incorporating longstanding medical-vocational
evaluation policies that take into account a claimant's age,
education, and work experience in addition to [the claimant's]
medical condition." <u>Hall</u>, 658 F.2d at 264. "These regulations
establish a 'sequential evaluation process' to determine whether a
claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five
steps: "The claimant (1) must not be engaged in 'substantial
gainful activity,' i.e., currently working; and (2) must have a
'severe' impairment that (3) meets or exceeds the 'listings' of
specified impairments, or is otherwise incapacitating to the extent
that the claimant does not possess the residual functional capacity
to (4) perform [the claimant's] past work or (5) any other work."
<u>Albright v. Commissioner of Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2
(4th Cir. 1999).[2]   A finding adverse to a claimant at any of
several points in the SEP forecloses an award and ends the inquiry.
For example, "[t]he first step determines whether the claimant is
engaged in 'substantial gainful activity.' If the claimant is
working, benefits are denied.  The second step determines if the
claimant is 'severely' disabled.  If not, benefits are denied."
<u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

---

[2] "Through the fourth step, the burden of production and proof is on the
claimant.   If the claimant reaches step five, the burden shifts to the
[government] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform "past relevant work" ("PRW"); if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other

_____

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[4]

<u>**Assignments of Error**</u>

Plaintiff argues that the ALJ erred: (1) by finding that Plaintiff retained the RFC for a full range of medium work and could perform his PRW (Docket Entry 13 at 3-6); (2) in assessing the credibility of Plaintiff's symptom reporting (<u>id.</u> at 6-7); and (3) by failing to give controlling weight to an opinion of one of Plaintiff's treating physicians (<u>id.</u> at 7-8). Defendant contends otherwise and urges that substantial evidence supports the determination of no disability. (Docket Entry 16 at 2-20.)

**1. RFC/PRW Findings**

Plaintiff first assigns error to the ALJ's conclusion that Plaintiff had the RFC to do medium work, such that he could return to his PRW as a mechanic. (Docket Entry 13 at 3-6.)[5] In particular, Plaintiff contends the ALJ "misinterpreted" statements by Drs. Jeffrey Beane, S. Scott Stewart, and Shaili Deveshwar,

---

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, . . . he or she can also do sedentary and light work [which have lower lifting limits]." 20 C.F.R. § 404.1567(c).

which actually supported restrictions of 35 pounds of lifting generally and of no overhead lifting. (Id.) Plaintiff asserts that the ALJ therefore erred by finding that Plaintiff could perform medium work, including his PRW, because medium work (as defined in 20 C.F.R. § 404.1567(c)) requires lifting more than 35 pounds and the position of mechanic, as defined in the Dictionary of Occupational Titles ("DOT"), qualifies as medium work and requires overhead lifting. (Id. at 6.)[6] These arguments provide no grounds for reversal or remand.

The ALJ did misstate Dr. Beane's opinion of Plaintiff's lifting ability, in that the ALJ described Dr. Beane as endorsing a limit of 50 pounds (see Tr. 16), when he actually restricted Plaintiff to 35 pounds of lifting (see Tr. 110). However, this misstatement, as well as all other material aspects of this assignment of error (which concern Plaintiff's alleged inability to perform medium work, including his PRW), do not provide grounds for relief because (based on the VE's testimony) the ALJ alternatively concluded Plaintiff could fill three light-exertion-level positions (i.e., jobs requiring lifting of only ten pounds frequently and 20 pounds occasionally, 20 C.F.R. § 404.1567(b)), each of which existed in significant numbers (Tr. 22). Specifically, the VE

_____

[6] The DOT listing for "Automobile Mechanic" attached by Plaintiff as Exhibit 1 to his brief does state that said job constitutes "Medium Work – Exerting 20 to 50 pounds of force occasionally" (Docket Entry 13-1 at 1), but does not appear to identify "overhead lifting" as a requirement (id. at 1-3).

testified that Plaintiff's acquired job skills from his PRW as a mechanic would transfer "fluidly" (without significant retraining or vocational adjustment) to the light-exertion-level jobs of shop estimator, automobile repair service estimator, and automobile tester, as well as that, "[i]n the national economy, approximately an average of 50,000 of those jobs would exist at the light level of exertion. [The] State of North Caroline [sic] would possess approximately 7,000 of those types of jobs, and in the region of Greensboro, High Point, Winston-Salem, or within 100 miles of either of those three cities, between 300 and 400 of those types of jobs would exist at the light level." (Tr. 447-48.)

Accordingly, even if the ALJ had credited Dr. Beane's opinion (and other parts of the record cited by Plaintiff in connection with this assignment of error) to arrive at an RFC for Plaintiff with a lifting limit of 35 pounds, resulting in a ruling at step four that Plaintiff could not perform medium work (including his PRW), substantial evidence nonetheless would support the ALJ's alternative conclusion at step five that a significant number of light-exertion-level jobs existed that Plaintiff could do. See Lee v. Sullivan, 988 F.2d 789, 794 (7th Cir. 1993) (documenting cases establishing that state or local job totals below 1,400 and as low as 174 supported "significant number" finding at step five); Hicks v. Califano, 600 F.2d 1048, 1051 (4th Cir. 1979) ("Claimant contends that the light and sedentary jobs described by the

vocational expert . . . do not exist in significant numbers within the region.  We do not think that the approximately 110 jobs testified to by the vocational expert constitute an insignificant number."); Welch v. Barnhart, No. Civ. 02-247-P-C, 2003 WL 22466165, at *4 (D. Me. Oct. 31, 2003) (unpublished) ("I conclude, particularly in the absence of evidence showing that the plaintiff is unable to travel, that the existence of 350 or more jobs in the region and more than 50,000 nationally is sufficient to meet the 'significant number' requirement."), recommendation adopted, 2003 WL 22834930 (D. Me. Nov. 24, 2003) (unpublished).  Plaintiff's instant assignment of error thus affords no basis to disturb the ALJ's finding of no disability.  See generally Morgan v. Barnhart, 142 F. App'x 716, 723 (4th Cir. 2005) ("Any error the ALJ may have made in rejecting Dr. Holford's medical opinion . . . was therefore harmless."); Camp v. Massanari, 22 F. App'x 311, 311 (4th Cir. 2001) (applying harmless error standard in Social Security benefits review context and refusing to remand absent showing of prejudice); Cook v. Colvin, No. 1:11CV87, 2014 WL 317847, at *2 (M.D.N.C. Jan. 29, 2014) (unpublished) (Eagles, J.) (same, citing Camp and Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)).

Notably, Plaintiff's brief contains no argument contesting the ALJ's finding that Plaintiff could perform the three light-exertion-level jobs identified by the VE.  (See Docket Entry 13.)

"Any issue not raised directly by Plaintiff is deemed waived."
Greene v. Commissioner of Soc. Sec., No. 12-14434, 2013 WL 5676247,
at *4 n.2 (E.D. Mich. Oct. 18, 2013) (unpublished); accord Muncy v.
Colvin, No. CIV-12-361-F, 2013 WL 3062029, at *3 (W.D. Okla. May
16, 2013) (unpublished) ("This precise argument was not raised in
[the] [p]laintiff's Opening Brief and should, therefore, be deemed
to be waived."), recommendation adopted, 2013 WL 3058370 (W.D.
Okla. June 13, 2013) (unpublished); Thacker v. Commissioner of Soc.
Sec., No. 1:11CV613-LJO-BAM, 2012 WL 1978701, at *11 n.10 (E.D.
Cal. June 1, 2012) (unpublished) ("[B]ecause [the] [p]laintiff did
not raise this issue it [sic] her Opening Brief, this argument is
waived."); Taylor v. Astrue, No. 5:09CV7RLV, 2012 WL 909506, at *4
(W.D.N.C. Mar. 16, 2012) (unpublished) ("[The] [p]laintiff waived
any argument not raised earlier via the summary judgment
briefing."); Bollas v. Astrue, 694 F. Supp. 2d 978, 990 (N.D. Ill.
2010) ("Issues not raised in a claimant's initial brief are
generally waived for purposes of review.").

Moreover, at the hearing before the ALJ, Plaintiff failed to
mount any opposition (or even to attempt to develop any record
contrary) to the view that he retained the capacity to do the
above-referenced three light-exertion-level jobs, despite the fact
that he had the opportunity (through his attorney) to question the
VE about the requirements of those positions, including by posing

hypothetical questions about whether any purported restriction (such as no overhead lifting)[7] would render said jobs unavailable to Plaintiff. (See Tr. 449 ("ALJ: 'Counsel, you may either modify my hypothetical or you may pose a hypothetical of your own, ma'am.' ATTY: 'Thank you, Your Honor. I don't have any questions for [the VE].' ALJ: 'Is there anything else you would like to put on the record, ma'am?' ATTY: 'Nothing further, thank you.'").)

As a result, Plaintiff waived, in this Court, any challenge to the ALJ's finding (based on the VE's testimony) that Plaintiff could perform those three types of jobs. See Howard v. Astrue, 330 F. App'x 128, 130 (9th Cir. 2009) ("The only limitation that substantial evidence arguably supports and that the ALJ failed to include in his hypothetical questions is depression. However, as noted above, [the plaintiff] waived any claim he may have had on this issue. [The plaintiff's] attorney had two opportunities to pose his own hypothetical questions to the VE, and he never mentioned depression as a limitation."); Hammond v. Chater, No. 96-3755, 116 F.3d 1480 (table), 1997 WL 338719, at *3 (6th Cir. June 18, 1997) (unpublished) ("[The] [p]laintiff also objects that the jobs listed by the VE, and used by the ALJ to deny benefits, are all at least semi-skilled, whereas the ALJ found her able to do

_____

[7] The DOT listings identified by the VE for the three jobs at issue (see Tr. 447) do not appear to set out "overhead lifting" as a requirement, see DOT §§ 379.364-010 ("Automobile Tester"), 620.261-018 ("Automobile-Repair-Service Estimator"), and 807.267-010 ("Shop Estimator") (4th ed. revised 1991).

only unskilled work.  [The] plaintiff waived this argument by failing to raise it to the VE at the hearing."); <u>Helsper v. Colvin</u>, No. 12-0708(SRN/SER), 2013 WL 3974174, at *19 n.19 (D. Minn. July 30, 2013) (unpublished) ("The ALJ relied on the VE's testimony about those jobs in his findings at Step Five.  [The plaintiff] did not challenge the VE's testimony as to those jobs and, therefore, any argument related to them is waived." (internal citation omitted)); <u>Campbell v. Commissioner of Soc. Sec.</u>, No. 11-14559, 2013 WL 823377, at *7 (E.D. Mich. Feb. 13, 2013) (unpublished) ("[D]espite expressly being given the opportunity to question the VE at the conclusion of the ALJ's questioning, [the] plaintiff's counsel failed to make any further inquiries or challenges to her testimony and thus waived any argument he may otherwise have had regarding the exertional requirements of the occupations the VE testified were available to [the] plaintiff." (internal citation omitted)), <u>recommendation adopted</u>, 2013 WL 822392 (E.D. Mich. Mar. 6, 2013); <u>Stepinski v. Astrue</u>, No. CA 11-183 ML, 2012 WL 3866678, at *9-10 (D.R.I. Aug. 6, 2012) (unpublished) ("[The] [p]laintiff complains that the ALJ did not ask the VE to consider the length of his bathroom breaks or their predictability. . . .  [The] [p]laintiff's counsel questioned the VE regarding his testimony and did not ask about this matter. . . .  The [c]ourt views unfavorably the silence of [the] [p]laintiff's counsel at the hearing regarding

the omission about which he now complains. Reversal and remand because of the omission about which [the] [p]laintiff now complains would encourage other counsel to remain silent in similar circumstances. This [c]ourt is disinclined to provide such an incentive. Accordingly, the [c]ourt finds that [the] [p]laintiff waived this issue by failing to raise it before the ALJ." (internal citations omitted)), recommendation adopted, 2012 WL 3863812 (D.R.I. Sept. 5, 2012) (unpublished); see also Pleasant Valley Hosp., Inc. v. Shalala, 32 F.3d 67, 70 (4th Cir. 1994) ("As a general matter, it is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency involved."); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal.").

In sum, even if the ALJ erroneously determined that Plaintiff retained the RFC for medium work (and thus could return to his PRW), the ALJ's uncontested alternative finding as to the existence of a significant number of light-exertion-level jobs that Plaintiff could do forecloses any relief on this assignment of error.

## 2. Symptom Credibility Analysis

In formulating Plaintiff's RFC, the ALJ summarized Plaintiff's testimony about his impairments and related symptoms. (Tr. 20.)

The ALJ then found that Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not credible to the extent they [we]re inconsistent with [an RFC] assessment [of physical capacity to perform a full range of medium work and mental capacity to perform sustained skilled or semi-skilled work]." (Tr. 21.) The ALJ thereafter set forth reasons for that finding with record citations. (Tr. 21-22.) According to Plaintiff, "the ALJ's assessment of [] Plaintiff's credibility is not supported by any of the evidence which [the ALJ] cited." (Docket Entry 13 at 7.) This assignment of error falls short.

The Social Security Administration's <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u> ("SSR 96-7p"), 1996 WL 374186 (July 2, 1996), as applied by the Fourth Circuit in <u>Craig</u>, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Id.</u> at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon

16

satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which they affect his or her ability to work. Id. at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

In this case (as quoted above), the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that his statements about the degree of his symptoms lacked credibility in so far as he claimed a level of physical impairment that would prevent him from performing a full range of medium work and/or a level of mental impairment that would preclude sustained skilled or semi-skilled work. (Tr. 21.) In particular, after discussing a variety of record materials, the ALJ ruled that "[t]he longitudinal medical evidence of record does not support the significant physical exertional limitations alleged by [Plaintiff]. [He] was not credible regarding the nature, severity and extent of

17

his alleged physical limitations, or his ongoing pain levels due to his alleged fibromyalgia and other impairments." (Id.)

Plaintiff's specific challenge to the ALJ's credibility analysis consists of these seven sentences:

> [T]he ALJ said that [] Plaintiff showed full range of motion in all joints and no synovitis, synovial thickening, areas of warmth, swelling or effusions. (Tr. 21) These types of clinical signs are not usually associated with Fibromyalgia. (See attached Exhibit 2) The ALJ called the 18 out of 18 trigger point finding by Dr. Devashwar [sic] "subjective" but this is one of the diagnostic criteria associated with Fibromyalgia. The ALJ went on to state that Dr. Bean [sic] said that [] Plaintiff could lift 50 pounds. (Tr. 21) As previously pointed out Dr. Bean [sic] said [] Plaintiff should lift no more than 35 pounds and should do no overhead lifting. (Tr. 110) Neither Dr. Beane nor Dr. Stewart said that pain management was unnecessary as claimed by the ALJ. (Tr. 21) and Dr. Deveshwar's statement regarding the "good" control of [] Plaintiff's symptoms was made on only one occasion. (Tr. 384)

(Docket Entry 13 at 7.)[8]

As an initial matter, none of these arguments suggest the ALJ erroneously discredited Plaintiff's testimony regarding any mental limitations. This assignment of error thus does not implicate the ALJ's finding that Plaintiff had the mental capacity for sustained skilled or semi-skilled work. Further, although Plaintiff's above-quoted contentions do address the ALJ's discounting of Plaintiff's description of his physical limitations, Plaintiff failed therein to develop any argument that his testimony should have required the

---

[8] The "Exhibit 2" cited by Plaintiff contains a print-out from the website of the American College of Rheumatology about fibromyalgia. (Docket Entry 13-2.)

ALJ to conclude Plaintiff lacked the capacity to perform not only medium work, but also light work (particularly the three jobs identified by the VE, as discussed in the preceding subsection). That failure warrants denial of relief. <u>See, e.g.</u>, <u>Belk, Inc. v. Meyer Corp., U.S.</u>, 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief."); <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); <u>Nickelson v. Astrue</u>, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) ("[A]s [the plaintiff] failed to develop these arguments in his Brief, the court will not address them.").

Nor do Plaintiff's instant arguments even implicitly assert that his testimony conclusively established his inability to perform the light-exertion-level jobs at issue. For example, if the ALJ properly had recognized that Dr. Beane advocated a 35-pound lifting limit, at most that could have caused the ALJ to credit Plaintiff's testimony to a similar extent (i.e., to restrict Plaintiff to 35 pounds of lifting). Such action would have weighed against a finding that Plaintiff could do medium work, but not light work (which, as previously noted, requires lifting less than 35 pounds). Similarly, even if Drs. Beane and Stewart never

described pain management as unnecessary for Plaintiff and Dr. Deveshwar only once referred to control of Plaintiff's symptoms as good, those facts would not have mandated that the ALJ rule Plaintiff incapable of even light work based on his testimony.

In that regard, the ALJ's decision confirms that, to explain the discrediting (at least in part) of Plaintiff's symptom descriptions, the ALJ relied on a number of other aspects of the medical record that called into question Plaintiff's reporting. (Compare Tr. 20 (noting that Plaintiff "testified at the hearing that he had a bulging disk and spurs in his neck," that his fibromyalgia "caused weakness and pain in his muscles and joints [and] . . . stabbing pain when he moved his joints," "that he had severe problems with his leg muscles [such] . . . that ascending and descending stairs was difficult [and] . . . that he could not squat," that, after walking, he "became faint and had to sit down," that he felt instant pain when he lifted a gallon of liquid," and that "gastrointestinal problems [left him] . . . nauseated most days," with Tr. 21-22 (referring to Dr. Beane's finding of limited shoulder impairment, "physical examinations reveal[ing] that [Plaintiff] has a normal gait, and that he can walk on his heels and toes," testing showing that Plaintiff "demonstrated full motor strength and normal sensation of his upper and lower extremities," "[a]n MRI of the cervical spine reveal[ing] 'minimal to mild'

degenerative changes, and no herniated discs," "[a] colonoscopy reveal[ing] only mild gastritis and antritis," the absence of "any ongoing cardiovascular treatment," and Dr. Stewart's inability to find "any etiology responsible for [Plaintiff's] pain symptoms").[9]

Finally, Plaintiff objects to the ALJ commenting on Plaintiff's retention of unimpeded joint motion and his negative results for various clinical signs (matters Plaintiff describes as typical in fibromyalgia cases), as well as the ALJ referring to one of Dr. Deveshwar's findings as "subjective" (despite the fact that it represents a valid diagnostic criterion for fibromyalgia). (Docket Entry 13 at 7.) Plaintiff, however, has not explained why refraining from (accurately) noting his full range of motion or his lack of "synovitis, synovial thickening, areas of warmth, swelling or effusions" (Tr. 21) would have required the ALJ to fully credit Plaintiff's description of his symptoms or, more importantly, to view that testimony as foreclosing a finding that he could do light work. (See Docket Entry 13 at 7.) Moreover, the mere fact that a particular test serves as a recognized means for diagnosing fibromyalgia neither renders inaccurate the ALJ's observation that

---

[9] Although Plaintiff's brief summarily declares that "the ALJ's assessment of [] Plaintiff's credibility is not supported by any evidence which [the ALJ] cited" (Docket Entry 13 at 7), Plaintiff's brief fails to challenge any of these elements of the ALJ's credibility analysis (see id. at 6-7).

it requires subjective findings[10] nor establishes that the ALJ should have deemed Plaintiff's testimony conclusive evidence of his inability to do the light-exertion-level jobs identified by the VE.

Accordingly, Plaintiff has not shown that the ALJ's evaluation of Plaintiff's credibility constituted reversible error.

## 3. Treating Physician Opinion(s)

Plaintiff's final assignment of error contests the ALJ's failure to afford controlling weight to the opinion(s) of one of Plaintiff's treating doctors, Dr. Richard Aronson. (Docket Entry 13 at 7-8.) Regarding Plaintiff's fibromyalgia, Dr. Aronson opined that Plaintiff "had a thorough workup and multiple interventions, but none ha[d] led to enough control of symptoms for him to resume his occupation. He is basically in pain on a daily basis, thus making any type of work that demands any level of physical activity impossible." (Tr. 336 (emphasis added).) The ALJ did not err by declining to give controlling weight to said opinion(s).

The treating source rule generally requires an ALJ to attribute controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, on the

_____

[10] The Court should note that the ALJ did not dismiss or minimize Plaintiff's fibromyalgia as an impairment. To the contrary, the ALJ found Plaintiff's fibromyalgia a severe impairment at step two (Tr. 15) and compared his symptoms to Listing 14.06, Undifferentiated and Mixed Connective Tissue Disease, 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 14.06, at step three (Tr. 19). The ALJ then concluded that Plaintiff's fibromyalgia did not meet or equal a listing (id.), a ruling Plaintiff has not contested (see Docket Entry 13).

ground that treating sources "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).[11] The rule also recognizes, however, that not all treating sources or treating source opinions deserve such deference.

First, the nature and extent of each treatment relationship may temper the weight afforded. 20 C.F.R. § 404.1527(d)(2)(ii). Further, a treating source's opinion controls only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. Finally, opinions regarding issues reserved to the Commissioner, regardless of source, do not receive controlling weight. See 20 C.F.R. § 404.1527(e).

Here, the ALJ evaluated Dr. Aronson's opinion(s) as follows:

---

[11] Effective March 26, 2012, a regulatory change recodified the treating source rule as 20 C.F.R. § 404.1527(c)(2), but did not alter its substantive content. See 77 Fed. Reg. 10651–10657 (Feb. 23, 2012). Given that all material events in this action preceded that non-substantive regulatory change, this Recommendation uses the prior codification.

> Dr. Aronson's conclusion that [Plaintiff] is precluded
> from working due to his fibromyalgia is out of proportion
> with the remaining objective clinical medical evidence
> contained in the record. The determination of whether a
> claimant is capable of working is an issue reserved for
> the Commissioner. Although Dr. Aronson's conclusions
> were given appropriate consideration, his opinions are
> not given controlling weight.

(Tr. 22 (internal citations omitted).) In so doing, the ALJ

correctly concluded that Dr. Aronson's opinion(s) that Plaintiff

could not "resume his occupation" (Tr. 336) and could not perform

"any type of work that demands any level of physical activity" (id.)

failed to warrant controlling weight because said opinion(s)

addressed matters reserved to the Commissioner. See Policy

Interpretation Ruling Titles II and XIV: Medical Source Opinions on

Issues Reserved to the Commissioner ("SSR 96-5p"), 1996 WL 374183,

at *5 (July 2, 1996) ("Medical sources often offer opinions about

whether an individual . . . is 'disabled' or 'unable to work,' or

. . . about an individual's ability to do [PRW] or any other type

of work. Because these are administrative findings that may

determine whether an individual is disabled, they are reserved to

the Commissioner . . . [and] can never be entitled to controlling

weight or given special significance."). Moreover, as found by the

ALJ (Tr. 22), substantial evidence of record conflicts with Dr.

Aronson's opinion(s) (see Tr. 17-18, 111, 179, 181, 185, 299, 314-

21).  Under these circumstances, the ALJ did not err by declining

to give Dr. Aronson's opinion(s) controlling weight.[12]

### CONCLUSION

Plaintiff has not appealed the ALJ's finding that a significant

number of light-exertion-level jobs exist that Plaintiff could

perform and thus his contention that the record fails to support the

ALJ's alternative finding that Plaintiff could do a full range of

---

[12] In connection with this final assignment of error, Plaintiff states that "new medical evidence which was submitted to the Appeals Council shows a [RFC] for sedentary work.  Thus, Dr. Aronson's opinion should be given controlling weight." (Docket Entry 13 at 8 (internal citation and footnote omitted).)  As an initial matter, although consistent with the view that Plaintiff could not resume his PRW (which, as discussed above, qualified as medium work), evidence that he could do sedentary work would not support Dr. Aronson's opinion that Plaintiff lacked the capacity for "any work that demands any level of physical activity" (Tr. 336).  See 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . [A] certain amount of walking and standing is often necessary in carrying out job duties.").  Further, according to Plaintiff, "[t]he new evidence consists of an FCE [functional capacity evaluation] . . . not contained in the record." (Docket Entry 13 at 8 n.2; see also Docket Entry 13-3 (attaching as "Exhibit 3" six pages of documents dated January 26, 2010, from physical therapy office, along with letter dated March 16, 2010, from Plaintiff's counsel to Appeals Council and related facsimile confirmation sheet).)  "[T]he Appeals Council is required to consider new and material evidence relating to the period on or before the date of the ALJ decision in deciding whether to grant review." Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 95 (4th Cir. 1991) (emphasis added). Here, the FCE in question post-dates the ALJ's decision by nearly a year and the physical therapist who performed the analysis stated that "[t]he efforts demonstrated by [Plaintiff] on this date indicate a current work capacity characterized by the Sedentary physical demand level for activity above the waist and the Light physical demand level for activity below the waist." (Docket Entry 13-3 at 4 (emphasis added).)  The physical therapist thus clearly did not relate his findings back to the period before the ALJ's decision.  Accordingly, Plaintiff's new evidence provides a basis neither for this Court to invalidate the ALJ's rulings (including the denial of controlling weight to Dr. Aronson's opinion(s)), see, e.g., Turnbow v. Social Sec. Admin., 173 F. App'x 598, 599 (5th Cir. 2006) ("[A] district court should review additional information that a petitioner submits to the Appeals Council after the ALJ has reached a decision . . . only if the new information relates to the time period for which the benefits were sought."), nor to order further administrative proceedings, see, e.g., Edwards v. Astrue, No. 7:07cv00048, 2008 WL 474128, at *9 (W.D. Va. Feb. 20, 2008) (unpublished) (declining to remand where new evidence created over six months after ALJ rendered decision did not address relevant time period).

medium work, including his PRW, affords no grounds for relief. Nor has Plaintiff shown reversible error in connection with the ALJ's analysis of Plaintiff's testimony or Dr. Aronson's opinion(s).

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 18, 2014